```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
┌─────────────────────────────────┐
│ LUGUS IP, LLC,                  │    HONORABLE JOSEPH E. IRENAS
│                                 │
│         Plaintiff,              │    CIVIL ACTION NO. 12-2906
│                                 │              (JEI/JS)
│     v.                          │
│                                 │             OPINION
│ VOLVO CAR CORP., and VOLVO CARS │
│ OF NORTH AMERICA, LLC,          │
│                                 │
│         Defendants.             │
│                                 │
└─────────────────────────────────┘
```

**APPEARANCES:**

TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP
By:   William H. Trousdale, Esq.
      Brian M. English, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
     Counsel for Plaintiff

*Pro hac vice:*
THE FUISZ-KUNDU GROUP LLP
By:   John R. Fuisz, Esq.
      Sudip Kundu, Esq.
1455 Pennsylvania Avenue, Northwest
Suite 400
Washington, District of Columbia 20004
     Counsel for Plaintiff

SAIBER LLC
By:   Arnold B. Calmann, Esq.
      Jakob Halpern, Esq.
One Gateway Center
10th Floor
Newark, New Jersey 07102
     Counsel for Defendants

*Pro hac vice:*
LATHAM & WATKINS LLP
By:  Matthew J. Moore, Esq.
     Jonathan D. Link, Esq.
555 Eleventh Street, Northwest
Suite 1000
Washington, District of Columbia 20004
     Counsel for Defendants

**IRENAS**, Senior District Judge:

This is a patent infringement case concerning allegations of both direct and indirect infringement.  Plaintiff Lugus IP, LLC contends that Defendants Volvo Car Corporation and Volvo Cars of North America, LLC have infringed U.S. Patent No. 5,806,926 (the "'926 patent").  Presently before the Court are two motions: Defendants' Motion for Summary Judgment, and Plaintiff's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2).[1]  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment, rendering Plaintiff's motion moot.

**I.**

The United States Patent Office issued the '926 patent to inventor David A. Parsons of Jefferson, Maryland, on September 15, 1998.  As detailed in this Court's claim construction Opinion, the '926 patent is for "a child safety seat that

---

[1] This Court exercises jurisdiction under 28 U.S.C. §§ 1331 & 1338(a).

2

automatically converts to an adult seat when not in use by a child." *Lugus IP, LLC v. Volvo Car Corp.*, No. 12-cv-2906 (JEI/JS), 2014 WL 2094086, at *1 (D.N.J. May 20, 2014).  By recorded assignment, Plaintiff Lugus IP, LLC ("Plaintiff" or "Lugus") now holds all rights to enforce the '926 patent.  Lugus brings this lawsuit against Defendants Volvo Car Corporation and Volvo Cars of North America, LLC ("Defendants" or "Volvo"), asserting that child safety booster seats installed in certain models of Volvo's vehicles, including the Volvo XC60, XC70, and V70, infringe upon the '926 patent.

The '926 patent describes a seat with an adult / undeployed setting, and a child / deployed setting.  This Court's claim construction Opinion describes this conversion in some detail:

> To convert from the adult setting to the deployed child setting, the undeployed seatback pivots down when an individual "manually pull[s] forward and downward" on that seatback.  This pivoting process reveals a Y-shaped safety harness with two belts, shaped to fit over a child's shoulders, in the seatback of the deployed setting.  The safety harness connects through a slot in a fastener between the child's legs.
> When the safety harness is engaged, the lower portion of the safety belt is held in position by the projecting end of a spring loaded plunger found underneath the seat.  A T-shaped handle appears on the front end of the seat; when the T-shaped handle is pulled outward, the spring loaded plunger is further compressed, releasing the safety belt.
> In addition, the underneath of the seat is fitted with a contracting piston.  When the T-shaped handle is pulled outward to release

>>the safety harness, the child may be removed from the deployed seat. After removing the child, an act that releases the downward pressure on the seat, the piston is permitted to activate and automatically return the deployed seat bottom to its undeployed position as a seatback.

*Id.* at *1-2.

Volvo's allegedly infringing product is styled as an "integrated two-stage booster seat."[2] (See, e.g., Isaksson Decl. Ex. 1 at 49)  In the adult / stowed position, Volvo's booster seat is equipped for an adult, who may sit normally in the seat with the standard three-point seatbelt arranged to fall across their body at the shoulder and waist. (Isaksson Decl., Ex. 1 at 50 fig. G043982; id., Ex. 2 at 49 fig. G071696; id., Ex. 3 at 47 fig. G017696; id., Ex. 4 at 52 fig. G030708)

To convert into the child / raised position, the user must pull forward on a handle found at the base of the seat bottom, then "[p]ress the booster cushion rearward to lock it in position." (See, e.g., Isaksson Decl. Ex. 1 at 50)  By pressing the booster cushion back, the user raises the height of the booster cushion, thereby permitting a child to sit in the seat

---

[2] The two-stage booster seat is designated as two-stage because it contains two different child settings. (See, e.g., Isaksson Decl. Ex. 1 at 49)  The appropriate setting for a child varies by the child's weight and height, for reasons discussed above. (Id.)  According to Volvo's disclosures, Volvo has previously included a one-stage booster seat, with just one child setting, bearing the same design but just one child setting, in various models in past years. (Isaksson Decl. ¶¶ 8-9)  Though Lugus raises certain evidentiary objections discussed *infra*, the record does not reflect any dispute regarding differences in the design of Volvo's one-stage or two-stage booster seats.

with the three-point seatbelt crossing their body at the waist and shoulders (rather than improperly across the neck or head). (See, e.g., id. at 49 fig. G043980) The two-stage booster seat includes a second raised position, permitting the user to adjust the seat to a higher position, thereby allowing a smaller child to sit in the seat with the three-point seatbelt crossing their body at the waist and shoulders. (Id. at 50) When raised in the child settings, the booster seat locks into position. (Id.)

To stow the booster cushion, a user must pull forward on the handle found at the base of the cushion to release the cushion from its locked position, and then press down on the center of the cushion to return it to its stowed position. (Id. at 51) According to the undisputed record, stowing Volvo's booster seat into the adult stowed position requires simply pulling the handle at the base of the cushion and pressing firmly on the cushion until it locks into the stowed setting. (Id.)

Lugus's Complaint alleging infringement of the '926 patent was originally filed in the United States District Court for the Eastern District of Virginia. Following litigation in that court, proceedings against certain Defendants were stayed pending the transfer of the case to this Court, where the parties litigated claims of direct and indirect infringement against Volvo. After identifying claims in the '926 patent that

required construction, the parties requested and were granted a claim construction hearing on May 1, 2014. After the hearing, but before issuance of this Court's claim construction Opinion and Order, Volvo filed the currently pending motion for summary judgment on May 9. The Court issued its claim construction Opinion and Order on May 20, and Lugus filed the currently pending motion to dismiss on May 30. Volvo filed its opposition to Lugus's motion to dismiss on June 5, and the Court held a status conference on June 10. Following the status conference, the parties finished briefing Volvo's motion for summary judgment in accordance with the Scheduling Order and the Court held oral argument on the motion for summary judgment on July 22. The Court now reviews the basis for granting summary judgment and denying the motion to dismiss.

## II.

Summary judgment is properly applied in patent cases, "as in other areas of litigation." *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011) (quoting *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed Cir. 1991)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999); *Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed Cir. 2001). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252 (1986). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson*, 477 U.S. at 249.

### III.

As a preliminary matter, the Court denies Lugus's varied objections concerning discovery. Lugus ostensibly seeks relief under Federal Rule of Civil Procedure 56(d), which provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

> opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.

Courts within the Third Circuit require parties seeking further discovery to submit an affidavit "specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained." *Smith v. Depuy Orthopaedics, Inc.*, 552 F. App'x 192, 195 (3d Cir. Jan. 14, 2014) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139-40 (3d Cir. 1988)).

Though Lugus has not submitted a separate formal affidavit or declaration, Lugus encloses the Fuisz Declaration accompanying its opposition brief. Portions of the Fuisz Declaration explain that, as a nonpracticing entity, Plaintiff has sought to limit discovery to only the necessary information for each stage of the case. (Fuisz Decl. ¶ 10) In doing so, Lugus highlights that it has not received information concerning Volvo's accused product in model year 2014 or 2015 vehicles. (Id. ¶ 11) Lugus contends that "[t]here is clearly confusion between the parties as to how the Volvo seats do or do not operate that would benefit from discovery," covering the more recent model years. (Id. ¶ 15)

However, this assertion does not explain what information concerning the model year 2014 and 2015 products would preclude

summary judgment. Lugus acknowledges that Volvo has produced the technical specification for the accused product. (See Fuisz Decl. Ex. D, Technical Specification) Lugus concedes that it has received production concerning model years 2005 through 2013. (Fuisz Decl. ¶ 11) There is no dispute that the "design and configuration of [Volvo's] one-stage and two-stage integrated booster seats" is the same in each of the accused model years, and there is no evidence to suggest that the design is any different in model years 2014 and 2015. (See Isaksson Decl. ¶ 9) Given that the same booster seat design is at issue, Lugus has not demonstrated why documents concerning model years 2014 and 2015 preclude summary judgment, and the Court may therefore properly consider Volvo's motion.[3]

---

[3] Lugus also asserts various challenges concerning the declaration of Per Isaksson, which must be denied. Contrary to Lugus's contention that the Court may not consider Isaksson's declaration, Isaksson was identified in Volvo's Rule 26(a)(1) initial disclosures, as demonstrated by Lugus's exhibit E. (Fuisz Decl. Ex. E at 2) In addition, Lugus asserts that this Court improperly permitted Volvo to substitute Isaksson's declaration for the originally filed declaration of Pia Landby. In the status conference on June 10, 2014, Volvo indicated that Landby replaced Isaksson at Volvo, though Isaksson remained with Volvo in a different capacity. Volvo asserted that Isaksson, as a result of his previous role with Volvo identified in the Rule 26(a)(1) disclosure, remained competent to authenticate the documents. To quickly and efficiently adjudicate the parties' dispute, a goal that Lugus encouraged in the course of its efforts to take an appeal of this Court's claim construction Opinion to the Federal Circuit, the Court permitted Volvo to amend its declaration and replace Landby with Isaksson. "[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court." *In re Fine Paper Antitrust Litig.*, 685 F.3d 810, 817 (3d Cir. 1982). The replacement of this declaration with a party identified in Volvo's Rule 26(a)(1) disclosures neither offends Rule 37 nor precludes this Court from reviewing the materials authenticated by Isaksson.

**IV.**

Patent infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). Indirect liability may also be imposed for inducing another to infringe. *Id.* § 271(b). Analysis of a patent infringement claim entails a two-step inquiry — a court must first construe the patent claims, and then determine whether the accused product contains each limitation of the properly construed claims, either literally or under the doctrine of equivalents. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372-74 (1996); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). "To prove an accused product literally infringes the patent in suit, the product must contain each and every limitation of the asserted claim(s)." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014). "If even one limitation is missing in the accused product, there is no literal infringement." *Noven Pharms., Inc. v. Watson Labs., Inc.*, No. 11-cv-5997 (DMC/JBC), 2013 WL 6190182, at *6 (D.N.J. Nov. 26, 2013). Having already completed claim construction, the Court proceeds to inquiry into whether Volvo's product contains each limitation of the asserted claim in the '926 patent.

Lugus's Complaint asserts two claims against Volvo: Count One alleges direct infringement of the '926 patent, and Count Two alleges indirect infringement by inducing others to purchase and use Volvo's booster seat. (Compl. ¶¶ 16, 25-27) Volvo seeks summary judgment of non-infringement on both counts, arguing that Volvo's booster seats do not infringe on the terms of the patent. Specifically, Volvo contends that its booster seats do not automatically retract into a fully contoured adult seat, its booster seats do not automatically retract when a child is not located in the seat, and that its booster seats do not infringe under the doctrine of equivalents. The Court addresses these arguments in turn.

**A.**

Claim 1 of the '926 patent claims the following:

> A adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle comprising an adult seat, a child safety seat, said child safety seat being part of said adult seat and *having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat*.

'926 Patent col.4 l.36-42 (emphasis added). A significant dispute, resolved in this Court's Claim Construction Opinion and Order, concerned the construction of the terms "automatically,"

"into a portion of said adult seat to form part of a fully contoured adult seat," and "when." *See Lugus IP, LLC*, 2014 WL 2094086, at *7-8.[4] Under the adopted constructions of these claim terms, Volvo's accused product does not automatically retract to form part of a fully contoured adult seat, nor does the accused product retract when a child is removed from the seat.

First, the Court reviews the relevant claim limitations concerning retraction when a child is removed from the '926 seat. Claim 1 of the '926 Patent, as construed by this Court, limits the claim to automatic retraction "in the event that" the child is removed from the seat. *Id.* at *8. This construction incorporates a temporal condition based on the language and context of the '926 patent, explained as such:

> In essence, though the ['926 seat's] piston assembly may "want" to automatically retract, *it may only automatically retract at the time that the pressure from the child is removed*. As a result, the Court will adopt Volvo's proposed construction because it comports with the description contained in the '926 patent.

*Id.* (emphasis added).

---

[4] This Court's claim construction Opinion and Order establish the construction of the disputed claim terms. *See Cybor*, 138 F.3d at 1454. Lugus contends that Volvo's motion advances a different claim construction and therefore an improper basis for finding non-infringement, but such arguments are irrelevant because the Court considers whether infringement occurred according to the constructions adopted in the claim construction Opinion.

Consistent with this limitation, Lugus concedes that Volvo's product does not automatically retract only at the moment that a child is removed from Volvo's seat. Volvo demonstrates this distinction between its product and the '926 patent by providing the owner's manuals in Volvo's Exhibits 1-4. Each exhibit demonstrates that Volvo's booster seat, in its child configuration, remains locked in the child position in the event that a child is removed from the seat. (See Isaksson Decl. Ex. 1 at 52; Ex. 2 at 50; Ex. 3 at 48; Ex. 4 at 52)  The retraction process occurs independent of the removal of a child's downward pressure and only when a user pulls the handle and pushes down on the seat cushion, unlike the limitation found in Claim 1 where retraction occurs when (in the event that, or at the instant that) the child's downward pressure is removed.

Similarly, the Court adopted the plain meaning of "automatically" and "to form part of a fully contoured adult seat" when construing the disputed claims in the '926 patent. *Lugus IP*, 2014 WL 2094086, at *7. In clarifying these terms, the Court explained that "automatically" is "generally understood as some kind of self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation." *Id.* (internal quotation marks omitted).  In addition, the Court gave effect to the plain meaning of Claim

13

1's language, "into a portion of said adult seat to form part of a fully contoured adult seat." *Id.*

In view of these constructions, there is no dispute that Volvo's accused product, when transitioning from its child to adult settings, requires a manual intervention to lock the Volvo seat into the adult configuration in order to form a portion of the fully contoured adult seat. Unlike Claim 1 of the '926 patent, the seat-bottom segment of Volvo's seat does not transition from its child setting to its adult setting under a self-actuating procedure; rather, a user must manually press the Volvo seat-bottom from the elevated child position into the stowed adult position.[5] (See Isaksson Decl. Ex. 1 at 51; Ex. 2 at 50; Ex. 3 at 48; Ex. 4 at 52) By requiring this manual interaction to reach the adult setting and become a part of the fully contoured adult seat, Volvo's product does not contain the automatic limitation of Claim 1 in the '926 patent, and therefore does not literally infringe the patent's terms.

---

[5] For example, the Volvo XC60 Owner's Manual explains that first a user pulls a handle to release the booster cushion, and then the user must: "Press down on the center of the booster cushion to return it to the stowed position." (Isaksson Decl. Ex. 1 at 51) In the '926 patent, following the release of the child restraint harness, the seat-bottom pivots upward in a self-actuating process after the child is released from the seat, at which point "[a]s illustrated for the seat **14**, with the seat back portion **18** in its upward position the child safety portion is stored behind the seat back portion **18** and this permits the seat **18** to be used in a normal fashion by an adult passenger." '926 Patent col.3 l.30-34. This is borne out in the claim language and its limitations: "said child safety seat . . . having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat . . . ." *Id.* col.4 l.38-42.

14

**B.**

The doctrine of equivalents "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002) (*Festo I*). However, when a patent claim is narrowed during prosecution, "prosecution history estoppel may limit the application of the doctrine of equivalents." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008). As the Defendants properly highlight, a "narrowing amendment to a patent claim that adds an additional claim limitation creates a presumptive surrender of equivalents." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004).

To overcome this estoppel, a patentee must establish one of three possible exceptions by a preponderance of the evidence:

> (1) [T]he equivalent would have been unforeseeable at the time the narrowing amendment was made; (2) the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent at issue; or (3) there was some other reason suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent.

*Honeywell Int'l*, 370 F.3d at 1140 (internal quotation marks omitted) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushinki Co., Ltd.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (*Festo II*)).

Here, the '926 patent's prosecution history demonstrates a limitation of Claim 1. The claim, initially phrased as two dependent claims, was "objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims [that were rejected because they were anticipated as prior art]." (Detailed Action ¶ 7, Jan. 5, 1998) As a result, the patentee rewrote those dependent claims to include "in independent form including all of the limitations of the base claim and any intervening claims," so as to comply with the examiner's commentary and submit a permissible claim.[6] (Response at 3, Mar. 16, 1998) This change

---

[6] Initially, the patentee proposed:
> 1. A vehicle child safety seat for protecting a child while seated in a vehicle wherein said child safety seat is formed as part of an adult seat. 2. The vehicle child safety seat of claim 1 wherein said child safety seat is retractable into a portion of said adult seat. . . . 9. The vehicle child safety seat of claim 2 wherein said child safety seat is automatically retractable when said child is not located in said seat. 10. The vehicle child safety seat of claim 9 wherein, said child safety seat retraction provides a fully contoured adult seat.

(Application at 11) This language, following the addition of the limitation, became:
> 1. An adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle comprising an adult seat, a child safety seat, said child safety seat being part of said adult seat and having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult

limited the '926 patent to covering the automatic retraction from the seat's child setting to its adult setting. *See* '926 Patent col.4 l.36-42. Lugus has failed to rebut this presumptive surrender of equivalents, putting forth no evidence in the record to support one of the relevant exception. Instead, Lugus contends that Volvo misconstrues the prosecution history. However, given the limitation added during prosecution and found in the language of Claim 1 of the '926 patent — that retraction occur automatically, when the pressure from the child was removed from the seat — the doctrine of equivalents does not offer a basis for determining that Volvo's product infringes.

**V.**

Following the issuance of the Court's claim construction Opinion and Order, and before opposing Volvo's motion for summary judgment, Lugus sought to dismiss this action by filing a motion to dismiss pursuant to Rule 41(a)(2). Lugus sought dismissal with prejudice to hasten a speedy appeal of this Court's claim construction Opinion and Order to the Federal Circuit, conceding that if this Court's claim constructions were

---

        seat when said child is not located in said child safety
        seat.
'926 Patent col.4 l.36-42. In other words, the prosecution history demonstrates that the '926 patent is limited to automatic retraction, surrendering the possibility of manually retracting from the child to adult setting.

17

upheld, Volvo's accused products did not infringe the '926 patent.  (See Mot. to Dismiss Br. at 2)

Rule 41(a)(2) provides that after a defendant has served an answer or motion for summary judgment:

> [A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.  Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

A plaintiff's voluntary dismissal under Rule 41(a)(2) requires court approval, though the general rule provides that such a motion should be granted liberally.  *Baldinger v. Cronin*, 535 F. App'x 78, 80 (3d Cir. Aug. 13, 2013) (per curiam).

Upon Lugus's proposed stipulation of dismissal, Volvo raised strong objections to Lugus's voluntary dismissal.  Specifically, Volvo feared that Lugus's proposed stipulation of dismissal would be insufficient for the Federal Circuit to "discern which of [this Court's] construction rulings would actually affect the issue of infringement."  *Jang v. Bos. Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008).  As a result, the parties risked that the Federal Circuit might remand the case back to this Court for specific findings concerning infringement.  *See id.* at 1335 ("The Courts of Appeals in

general and our court in particular have recognized that a remand for clarification is appropriate where a judgment is ambiguous."). In addition, Volvo argued that Rule 41(a)(2) dismissal would not resolve the pending case or controversy because Volvo has asserted a counterclaim seeking a judgment of invalidity of the '926 patent.

Despite the parties' dispute over Rule 41, both Lugus's motion and Volvo's counterclaim are rendered moot by this Court's grant of summary judgment following claim construction. In determining the basis for a judgment of non-infringement of the '926 patent, the parties may litigate any appeal with a full description of the basis for non-infringement. Moreover, the prompt briefing and decision of Volvo's summary judgment motion grants Lugus the relief it sought through its proposed voluntary dismissal with prejudice — an adverse judgment with prejudice and therefore the opportunity to challenge this Court's claim constructions and basis for non-infringement on appeal.

Following the finding of non-infringement described *supra*, Volvo's invalidity counterclaim is also rendered moot. In the present matter, Volvo's counterclaim for invalidity operates as a defense to Lugus's claims of infringement, but having determined that Volvo's product is non-infringing, Volvo can no longer, "under all the circumstances, show that there is a substantial controversy, between the parties having adverse

19

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)).  The Court will dismiss the counterclaim without prejudice given that no substantial controversy between Volvo and Lugus remains.  This resolves all of the outstanding claims in the case and permits the parties to fully litigate any grounds they may have for appeal.

## VI.

For the reasons set forth above, Volvo's motion for summary judgment will be granted.  In addition, Lugus's motion to dismiss will be denied as moot.  Volvo's pending counterclaim for invalidity of the '926 patent, effectively a defense to Plaintiff's claims of infringement, is also rendered moot in light of this Court's determination that Volvo's product does not infringe upon the '926 patent.  An appropriate Order accompanies this Opinion.

Date: 7-23-14

                                                   s/ Joseph E. Irenas
                                        **JOSEPH E. IRENAS, S.U.S.D.J.**