UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LUGUS IP, LLC,

   Plaintiff,

  v.

VOLVO CAR CORP., and VOLVO CARS
OF NORTH AMERICA, LLC,

   Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-2906
(JEI/JS)

**OPINION**

**APPEARANCES**:

TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP
By:  William H. Trousdale, Esq.
  Brian M. English, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
  Counsel for Plaintiff

*Pro hac vice:*
THE FUISZ-KUNDU GROUP LLP
By:  John R. Fuisz, Esq.
  Sudip Kundu, Esq.
1455 Pennsylvania Avenue, Northwest
Suite 400
Washington, District of Columbia 20004
  Counsel for Plaintiff

SAIBER LLC
By:  Arnold B. Calmann, Esq.
  Jakob Halpern, Esq.
One Gateway Center
10th Floor
Newark, New Jersey 07102
  Counsel for Defendants

*Pro hac vice:*
LATHAM & WATKINS LLP
By:  Matthew J. Moore, Esq.
     Jonathan D. Link, Esq.
555 Eleventh Street, Northwest
Suite 1000
Washington, District of Columbia 20004
     Counsel for Defendants


**IRENAS**, Senior District Judge:

This Court granted summary judgment in favor of Defendants in this patent infringement case, and Defendants now move to declare the matter "exceptional" pursuant to 35 U.S.C. § 285 and seek an award of attorneys' fees (Defs.' Mot. Att. Fees ("DMAF"), Dkt. No. 135).  Defendants Volvo Car Corporation and Volvo Cars of North America, LLC ("Defendants") contend that Plaintiff Lugus IP, LLC ("Plaintiff") brought an objectively unreasonable case in bad faith and unnecessarily caused Defendants to incur fees and costs during the litigation.  (Id.) Plaintiff denies Defendants' allegations and opposes the motion but adds that even if the Court does award fees, the fees Defendants seek are not reasonable.  Plaintiff has also filed a motion to stay the Court's consideration of Defendants' motion pending appeal of the Court's grant of summary judgment.[1]  (Pl. Mot. Stay, Dkt. No. 141)

---

[1] Plaintiff's motion to stay (Dkt. No. 141) seeks to stay consideration of Defendants' motion to tax costs (Dkt. No. 133) as well as Defendants' motion for attorneys' fees (Dkt. No. 135).  The Court will deny Plaintiff's motion to stay regarding both motions, though this Opinion addresses the merits of Defendants' motion for attorneys' fees only.

For the reasons below, Plaintiff's motion to stay will be
**DENIED** and Defendants' motion to declare this matter an
exceptional case and award attorneys' fees will be **GRANTED**.

## I.    Relevant Facts

Lugus originally filed its Complaint alleging infringement
of U.S. Patent No. 5,806,926 (the "'926 patent") in the United
States District Court for the Eastern District of Virginia.
That Court granted Defendants' motion to transfer the matter to
this Court in May 2012, and over the next two years, the parties
litigated claims of direct and indirect infringement against
Volvo.

The patent at issue protects "a child safety seat"
envisioned for use in mass transit vehicles "that automatically
converts to an adult seat when not in use by a child." *Lugus
IP, LLC v. Volvo Car Corp.*, No. 12-cv-2906 (JEI/JS), 2014 WL
2094086, at *1 (D.N.J. May 20, 2014).  Plaintiff brought suit
against Defendants asserting that child safety booster seats
installed in certain models of Volvo's vehicles infringed upon
the '926 patent.

Claim 1 of the '926 patent claims the following:

> A [sic] adult vehicle seat in combination with
> a child safety seat for protecting a child
> while seated in a vehicle comprising an adult
> seat, a child safety seat, said child safety
> seat being part of said adult seat and having

> retracting means for automatically retracting
> said child safety seat into a portion of said
> adult seat to form part of a fully contoured
> adult seat when said child is not located in
> said child safety seat.

'926 Patent col.4 l.36-42.

The Court held a claim construction hearing to construe the terms "automatically," "into a portion of said adult seat to form part of a fully contoured adult seat," and "when," and adopted the plain meaning of each term. *See Lugus IP, LLC v. Volvo Car Corp.*, No. CIV.A. 12-2906 JEI, 2014 WL 2094086 (D.N.J. May 20, 2014).

Much of the litigation centered on the conversion of a seat from a deployed setting, designed for a child, to an undeployed setting, designed for an adult.  In its Summary Judgment Opinion (quoting its Claim Construction Opinion), the Court described how Plaintiff's patented product works:

> To convert from the adult setting to the
> deployed child setting, the undeployed
> seatback pivots down when an individual
> manually pull[s] forward and downward on that
> seatback. This pivoting process reveals a Y-
> shaped safety harness with two belts, shaped
> to fit over a child's shoulders, in the
> seatback of the deployed setting. The safety
> harness connects through a slot in a fastener
> between the child's legs.
> When the safety harness is engaged, the
> lower portion of the safety belt is held in
> position by the projecting end of a spring
> loaded plunger found underneath the seat.  A
> T-shaped handle appears on the front end of
> the seat; when the T-shaped handle is pulled

4

outward, the spring loaded plunger is further
compressed, releasing the safety belt.

In addition, the underneath of the seat
is fitted with a contracting piston. When the
T-shaped handle is pulled outward to release
the safety harness, the child may be removed
from the deployed seat. After removing the
child, an act that releases the downward
pressure on the seat, the piston is permitted
to activate and automatically return the
deployed seat bottom to its undeployed
position as a seatback.

*Lugus IP, LLC v. Volvo Car Corp.*, 32 F. Supp. 3d 528, 531
(D.N.J. 2014) (internal quotation marks omitted).

The Court described Defendants' accused product as follows:

Volvo's allegedly infringing product is
styled as an integrated two-stage booster
seat. . . . In the adult/stowed position,
Volvo's booster seat is equipped for an adult,
who may sit normally in the seat with the
standard three-point seatbelt arranged to fall
across their body at the shoulder and waist.
. . .

To convert into the child/raised
position, the user must pull forward on a
handle found at the base of the seat bottom,
then [p]ress the booster cushion rearward to
lock it in position. . . . By pressing the
booster cushion back, the user raises the
height of the booster cushion, thereby
permitting a child to sit in the seat with the
three-point seatbelt crossing their body at
the waist and shoulders (rather than
improperly across the neck or head). . . . The
two-stage booster seat includes a second
raised position, permitting the user to adjust
the seat to a higher position, thereby
allowing a smaller child to sit in the seat
with the three-point seatbelt crossing their
body at the waist and shoulders. When raised
in the child settings, the booster seat locks
into position. . . .

To stow the booster cushion, a user must
pull forward on the handle found at the base

> of the cushion to release the cushion from its
> locked position, and then press down on the
> center of the cushion to return it to its
> stowed position. . . . According to the
> undisputed record, stowing Volvo's booster
> seat into the adult stowed position requires
> simply pulling the handle at the base of the
> cushion and pressing firmly on the cushion
> until it locks into the stowed setting. . . .

*Id.* at 531-532 (internal quotations and citations omitted).

In comparing these two products, the Court found that Defendants' seats did not infringe upon Plaintiff's patent, because it required manual intervention (the "pulling [of] the handle" and the "pressing firmly on the cushion"), which could not be defined as converting "automatically," as the Court had construed the term. *Id.* Because the patent only protects a seat that retracts "automatically," the Court granted summary judgment in favor of Defendants.

Defendants now argue that Plaintiff's infringement claims were so substantively weak from the outset as to be objectively unreasonable and that Plaintiff also demonstrated bad faith in its litigation conduct by improperly filing suit in the Eastern District of Virginia, improperly opposing Defendants' requests to file a summary judgment motion earlier in the case, and by causing Defendants to prepare for a summary judgment hearing in which Plaintiff "never intended to argue." (Defs.' Br. in Support of DMAF ("Defs.' Br. DMAF"), Dkt. No. 136-5 at 13-24). Plaintiff denies these allegations and opposes the motion but

6

also seeks that it be stayed pending appeal of the Court's grant
of summary judgment for Defendants.  Should the Court deny the
stay and award Defendants attorneys' fees, Plaintiff argues
further that the fees that Defendants seek are unreasonable.
The Court considers each of these arguments in turn.

## II.  Jurisdiction and Motion to Stay

An appeal does not deprive this Court of jurisdiction to
hear Defendants' motion for attorneys' fees.  *See, e.g.,
Christian v. Honeywell Ret. Ben. Plan*, No. CIV.A. 13-4144, 2014
WL 1652222, at *3 (E.D. Pa. Apr. 24, 2014) (*citing In re Unisys
Corp. Retiree Medical Benefits Erisa Litigation*, 2007 WL
4287393, at *1 (E.D.Pa. Dec.4, 2007) and *West v. Keve*, 721 F.2d
91, 95 n. 5 (3d Cir.1983)).

"Moreover, the weight of authority is that the usual course
is for the Court to consider attorneys' fees promptly after the
merits decision rather than stay a motion for attorneys' fees
until resolution of the appeal." *Devcon Int'l Corp. v. Reliance
Ins. Co.*, No. CIV. 2001-201, 2008 WL 219968, at *1 (D.V.I. Jan.
2, 2008). [2]  As an Advisory Committee's Note to Fed. R. Civ. P.

---

[2] *See, e.g.: In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, No. CIV.A.
03-3924, 2007 WL 4287393, at *2 (E.D. Pa. Dec. 4, 2007) ("[A] number of
courts have found that a pending appeal, standing alone, is insufficient
reason to postpone a fee decision for an indefinite period."); *McCloud v.
City of Sunbury*, No. 4:04 CV 2322, 2006 WL 449198, at *1 (M.D. Pa. Feb. 23,
2006) (denying the defendant's motion to stay the fee application pending
appeal and noting that "[w]e do not recall any instance where we have stayed

54 observes, "In many nonjury cases the court will want to consider attorneys' fee issues immediately after rendering its judgment on the merits of the case."  Plaintiff offers no compelling reason to deviate from the usual course here, and its motion to stay will therefore be denied.

### III. Award of Attorneys' Fees

#### a. Legal Standard

Section 285 of U.S.C. 35 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

Prior to the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), courts had required a finding of both objective unreasonableness and bad faith conduct in order to find a case "exceptional." *Octane*, 134 S. Ct. at 1752.  However, as *Octane* made clear, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of

---

a motion for attorney's fees and expenses pending the outcome of an appeal"); *Slip N' Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113 CIV, 2007 WL 1098751, at *3 (S.D. Fla. Apr. 8, 2007) ("With respect to the request to stay the pending motion for attorneys' fees, the Court is not inclined to grant such an indefinite stay of potentially complex issues that the Court of Appeals may want to consider in conjunction with an appeal of the ultimate judgment rendered in the case.").

the case) *or* the unreasonable manner in which the case was
litigated." *Id.* at 1756 (emphasis added).

The Supreme Court gave district courts discretion to
determine, on a case-by-case-basis, whether a case is
exceptional by considering "the totality of the circumstances."
*Id.* Such circumstance can include factors such as
"frivolousness, motivation, objective unreasonableness (both in
the factual and legal components of the case) and the need in
particular circumstances to advance considerations of
compensation and deterrence." *Id.* at 1756, n. 6 (*citing Fogerty
v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)).

### b. Objective Unreasonableness of Plaintiff's Claims

The '926 patent protects only a seat "having retracting
means for automatically retracting said child safety seat into a
portion of said adult seat to form part of a fully contoured
adult seat when said child is not located in said child safety
seat." ('926 Patent col.4 l.39-42)  Here, Defendants first
argue that Plaintiff's infringement claims were objectively
unreasonable at the outset of this litigation, because
Plaintiff's patent protects only automatically retracting seats,
and Plaintiff "knew at the time it filed that the Volvo seats
operated manually — the opposite[.]"  (DMAF 9)

Indeed, Plaintiff's product and Defendants' product differ in many ways despite both being seats designed to convert between child and adult settings.  Whereas Plaintiff's patented product drops a child seat down from the back of an adult seat, Defendants' product pops part of the adult seat up into a booster seat that rises to two separate child settings.  ('926 Patent col.4 l.1-28; Defs.' Br. in Support of Mot. for Summ. J. ("DMSJ"), Dkt. No. 98 at 16-21)  Unlike Plaintiff's product, which uses a Y-shaped seat belt specifically designed for a child, Defendants' product utilizes the existing adult seat belt, simply boosting the child so the belt crosses the child's body at the appropriate height.  (Id.)  And as was most heavily debated during litigation, while Plaintiff's product retracts "automatically" once the child is lifted from the seat, Defendants' product can only be fully stowed by manually pulling a lever and manually pushing the seat down into its stowed position, all after the child is removed.  (Id.)  These basic should have made clear to Plaintiff that Defendants' product could not reasonably infringe Plaintiff's patent.

Nonetheless, Plaintiff proceeded through claim construction and summary judgment to argue that Defendants' product operated "automatically," which the Court found is "generally understood as some kind of self-acting or self-regulating mechanism that performs a required act at a predetermined point in an

operation." *Lugus*, 32 F. Supp. 3d at 535 (internal quotation marks omitted).

In support of its position that Defendants' seat was "self-acting" or "self-regulating," Plaintiff argued during the claim construction hearing that the Volvo seats employ a spring similar to the spring mechanism used in the patented product to bias the seat towards retraction, even though it requires additional manual pressure to fully lock the seat into its stowed position. (May 1, 2014 Tr. at 20-22) Similarly, Plaintiff noted in its summary judgment briefing that the accused product was designed to be operational with one hand and with limited force: "The seat retracts automatically into a portion of the adult seat . . . . There is no requirement of the force needed to put the seat into the retracted position because it does so automatically. The only force needed is to push the rear of the seat down into a locked position." (Pl. Opp. Mot. Summ. J., Dkt. No. 119 at 16-17)

However, even if some part of Defendants' product operated "automatically" through a spring mechanism, at no point did these arguments counter the basic fact that Defendants' product could not transform into "a fully contoured adult seat" without manual intervention from the user — a fact that precluded a

11

finding of patent infringement from the very beginning.[3]  In its
initial Complaint, Plaintiff acknowledged that "the booster is
folded down from either the first stage or the second stage by
pulling the handle outwards and pushing the booster downwards."
(Compl., Dkt. No. 1 ¶ 17)  By then stating in its summary
judgment briefing that a force is needed "to push the rear of
the seat down into a locked position," Plaintiff only reiterated
its acknowledgment that Defendants' seat operates manually.
Nonetheless, over more than two years of litigation, Plaintiff
alleged that Volvo's seats "retract automatically into the adult
seat after release of the front latch."  (Id. ¶ 21)

    To justify its position that the latch and manual pressure
required to stow the seat did not disqualify the product from
being considered "automatic," Plaintiff argued that "pulling a
handle to activate the retraction," which is a manual
intervention, "is not precluded by the Court's construction,
which is how both the patent and the Volvo seats work."  (Pl.
Opp. Defs.' Mot. for Summ. J., Dkt. No. 119 at 27)  In other
words, because the patented product, which the parties do not
dispute retracts "automatically," requires the manual pulling of

---

[3] As the Court put it, "[u]nlike Claim 1 of the ' 926 patent, the seat-bottom
segment of Volvo's seat does not transition from its child setting to its
adult setting under a self-actuating procedure" but rather "requires a
manual intervention to lock the Volvo seat into the adult configuration in
order to form a portion of the fully contoured adult seat."  Lugus, 32 F.
Supp. 3d at 535.

a T-shaped handle to activate, Defendants' product, which
requires both a latch to activate and additional manual pressure
to stow, may also be considered "automatically" retracting.

This argument was not objectively reasonable.  While it may
be true that "[i]n virtually any 'automatic' action, there will
be some 'manual' intervention that initiates the action," (Pl.
Opp. DMAF at 14), Plaintiff never disputed that the manual
intervention required to operate Defendants' product is not
merely an activation.  To the extent that pulling the T-shaped
handle in Plaintiff's product can be analogized to pulling the
latch in Defendants' product, Plaintiff offered no corresponding
analogy for the additional pressure required to stow Defendants'
seat, even after the spring has done its part in biasing the
seat downward.  There was no reasonable dispute that this
stowing action, even if it can be undertaken with one hand, is
still a manual action.

Moreover, as Defendants pointed out, the prosecution
history of the patent at issue specifically distinguished
Plaintiff's product from prior art by initially rejecting
Plaintiff's patent application when it attempted to patent a
seat where "the user simply presses the push button" and similar
to Defendants' product, "applies a downward force onto the
cushion insert" to lower the seat from a raised position.
(DMSJ, Dkt. No. 98 at 26)  Plaintiff's claims that Defendants'

13

seat retracts automatically were therefore not objectively
reasonable.

Because Plaintiff had no objectively reasonable basis to
contend that Defendants' manually operated seat infringed upon
Plaintiff's patent, the Court finds this case to be exceptional
under 35 U.S.C. § 285 and in its discretion, awards attorneys'
fees to Defendants, without needing to reach the issue of
whether Plaintiff acted in bad faith.

### c. Reasonableness of Attorneys' Fees Sought

"It is well settled that a plaintiff requesting attorney
fees bears the burden of proving that the requested fees are
reasonable." *Line Rothman v. Target Corp.*, No. CIV. 05-4829
(GEB), 2009 WL 349139, at *2 (D.N.J. Feb. 11, 2009) (*citing
Hensley v. Eckerhart*, 461 U.S. 424 at 437 (1983)).  "That burden
is met by the plaintiff's production of evidence of the
reasonableness of the hours and hourly rate claimed" and "[i]f
the plaintiff meets this burden, the adverse party bears the
burden of challenging the reasonableness of the requested fee."
*Id.* (*citing Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.
1990) (internal quotation marks removed)).  Ultimately, "[t]he
decision to award attorney fees is one committed to the
discretion of the trial court." *Evident Corp. v. Church &*

14

*Dwight Co., Inc.*, 399 F.3d 1310, 1315 (Fed. Cir. 2005) (*citing* 35 U.S.C. § 285).

In the Third Circuit, courts calculate attorneys' fees pursuant to the 'lodestar' approach, which requires multiplying the amount of time reasonably expended by reasonable hourly rates. *Tech. Innovations, LLC v. Amazon.com, Inc.*, No. CV 11-690-SLR, 2014 WL 3703582, at *2 (D. Del. July 23, 2014) (*citing Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). "The court may exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation" and "[t]he prevailing community market rates assist the court in determining a reasonable hourly rate." *Id.* (internal citations omitted).

Here, Defendants have provided, via declaration from counsel of record Jonathan D. Link, a breakdown of expenses billed between February 2012 (Plaintiff filed its Complaint in December 2011) and July 2014, when the Court granted Defendants' motion for summary judgment. (Ex. 2 of Link Declaration in Support of DMAF ("Link Decl."), Dkt. No. 136-1) Defendants submitted the hourly rates and hours billed for the ten attorneys and fourteen paralegals who worked on the matter[4],

---

[4] Defendants explain that the "various attorneys and paralegals were due to the length of the litigation" as Defendants had to replace at least four individuals working on the matter who left Latham & Watkins LLP (the law firm representing Defendants) while the litigation was pending. (Defs.' Reply to Pl. Opp. DMAF, Dkt. No. 154 at 14-15)

including a summary of each task, along with biographies for
each attorney.  (Id.)  The records show that the hourly rate
varied between $274.50 and $895.50 for attorneys, and between
$171 and $328.50 for paralegals.  (Id.)  Attorneys and
paralegals billed at different hourly rates, depending on
seniority, and in some cases, the rate for a given individual
rose over time.  (Id.)

For the more than 1500 hours billed to transfer venue,
construe claims, and move for summary judgment, Defendants seek
fees of $882,142.95.  (Id.; Link Decl. ¶ 7)  Defendants also
seek another $45,130.00 for the 47 hours billed for making the
instant motion for attorneys' fees.[5]  (Link Decl. ¶ 7)  In total,
Defendants seek **$927,272.95**.

To establish the prevailing community market rate for this
type of patent infringement litigation, Defendants refer to the
Report of Economic Survey prepared by the American Intellectual
Property Law Association ("AIPLA").  (Link Decl. Ex. 10, Dkt.
No. 135-7)  According to AIPLA, which publishes average fees and
costs for litigating a patent case, the average cost of
defending a patent infringement case with exposure of $1-$10

---

[5] A party seeking attorneys' fees pursuant to 35 U.S.C. § 285 may seek fees
for the fee petition itself.  *See Howes v. Med. Components, Inc.*, 761 F.
Supp. 1193, 1200-01 (E.D. Pa. 1990)(awarding fees for 204.5 hours of work
done on fee petition by attorneys and paralegals but excluding work done by
"overhead" employees such as secretaries, accounting personnel, and word
processing personnel.)

million brought by a non-practicing entity through the close of
discovery is $988,000 (Id.)  Based on this average cost,
Defendants contend that their request for $927,272.95 in fees is
reasonable.

Plaintiff, however, objects to these fees for three
reasons.  First, in its opposition brief, Plaintiff utilizes
(without explanation) the AIPLA category corresponding to a
matter with exposure up to $1 million.  (Pl. Opp. DMAF, Dkt. No.
139 at 26)  Defendants reply that Lugus "maintained that the
case was worth around $10 million" by claiming a minimum royalty
of $75-$100 per unit in its response to an interrogatory, a
number to be multiplied by each vehicle Volvo sold with the
accused product.  (Defs.' Reply to Pl. Opp. DMAF, Dkt. No. 154
at 12-13)  Defendants state that they sold 103,263 such vehicles
in 2014 in the United States, creating a potential liability of
nearly $1 million in 2014 alone, and "[f]actoring in additional
sales would only increase Volvo's potential liability to well
over $1 million."  (Id.)  The Court agrees that the potential
liability in this case exceeded $1 million, and the appropriate
AIPLA category should therefore contemplate exposure from $1-$10
million.

Second, Plaintiff suggests that Defendants' AIPLA estimate
fails to take into account geographic designations, because New
Jersey and Virginia fall in the "Other East" category, which

17

averages fees ($514,000) that are lower than the national average ($988,000) that Defendants seek to use.[6] (Pl. Opp. DMAF, Dkt. No. 139 at 26) Defendants counter that Camden, New Jersey, and Alexandria, Virginia, the locations of the district courts where the relevant litigation took place, fall under the metropolitan areas of Philadelphia and Washington, D.C., respectively. (Defs.' Reply to Pl. Opp. DMAF, Dkt. No. 154 at 17) The national average that Defendants seek to use ($988,000) is considerably lower than the averages in the metropolitan areas of either Philadelphia ($1,275,000) or Washington, D.C. ($1,526,000); nonetheless, "Volvo used the national average as a base line to account for some litigation activities occurring in Trenton, as well as the hybrid nature of this case, with fact discovery not closing, but extensive procedural efforts put forth to even file the summary judgment motion." (Id.) The Court accepts these arguments and finds Defendants' use of the national average to be reasonable.

Finally, Plaintiff notes that although the parties engaged in summary judgment briefing, "[t]his case ended <u>before</u> the close of discovery," noting that there was "no discovery motions, no depositions, no experts," and "the only discovery

---

[6] Plaintiff uses the word "median" in its brief (Pl. Opp. DMAF, Dkt. No. 139 at 26) but refers to numbers that correspond to the "mean (average)," which Defendants also use. Accordingly, the Court also adopts the mean (average) as the appropriate rate.

that did occur was limited to that needed for claim
constructions." (Pl. Opp. DMAF, Dkt. No. 139 at 27, 25)
Defendants acknowledge that this case was "a hybrid of the two
procedural stages" in that it "never reached the close of fact
discovery" but that it required not only summary judgment
briefing and argument but "extensive procedural efforts by Volvo
to overcome Lugus's objections for the right to file a summary
judgment motion." (DMAF at 23) Defendants accuse Plaintiff of
prolonging the litigation and contributing to its cost by
opposing Defendants' requests to file a summary judgment motion
during an initial status conference on November 13, 2012; in a
letter dated December 26, 2012; on March 15, 2013; and during a
teleconference on April 7, 2014. (DMAF 15-18)

     The Court recognizes that the cost of summary judgment
litigation here may have been lower than the cost of full-
fledged discovery in the average case. However, this
possibility does not render Defendants' attorneys' fees
unreasonable given Defendants' use of the lower national average
rather than the higher metropolitan averages to calculate its
fees, at least in part due to "the hybrid nature of this case."
(Defs.' Reply to Pl. Opp. DMAF, Dkt. No. 154 at 17)

     Plaintiff does not question the hourly rates billed by
Defendants' attorneys, and the Court finds the rates reasonable
given the experience and specialized expertise of the attorneys

involved.  Defendants having met their burden to justify their requested fees, and Plaintiff having failed to challenge those fees, the Court finds Defendants' request for attorneys' fees reasonable in light of prevailing community market rates.

## IV.  Conclusion

For the reasons set forth above, Plaintiff's motion to stay will be **DENIED**, and Defendants' motion to declare this matter an exceptional case and award attorneys' fees will be **GRANTED**. An appropriate Order accompanies this Opinion.

Date: 3-26-15

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**